1

2

3

4

5

6

7          UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
8               AT SEATTLE

9  BENJAMIN BUDDE,                    )
                                     )
10            Plaintiff,             )     CASE NO. C04-1389-JCC
                                     )
11       v.                          )     REPORT AND
                                     )     RECOMMENDATION
12  JO ANNE B. BARNHART,             )
   Commissioner of Social Security,  )
13                                   )
             Defendant.              )
14  _____)

15        Plaintiff Benjamin Budde appeals to the District Court from a final decision of the

16  Commissioner of the Social Security Administration (the "Commissioner") denying his

17  applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB")

18  under Titles II and XVI of the Social Security Act.  For the reasons set forth below, it is

19  recommended that the Commissioner's decision be AFFIRMED.

20                      I.  PROCEDURAL HISTORY

21        Plaintiff filed his applications for SSI and DIB on May 14, 1999.  Tr. 16.  He alleged that

22  he became disabled on July 31, 1997, due to his carpal tunnel syndrome, reflex sympathetic

23  dystrophy, and depression.  Plaintiff's applications were denied initially and on reconsideration,

24  and he timely requested a hearing.  Tr. 388.  Administrative Law Judge ("ALJ") Edward P.

25

26  REPORT AND RECOMMENDATION
   PAGE - 1

1  Nichols held a hearing on March 5, 2001, and heard testimony from plaintiff and vocational

2  expert John Fontaine.  On July 26, 2001, the ALJ issued a written decision denying plaintiff's

3  applications for SSI and DIB.  Tr. 415-421.  Plaintiff appealed the ALJ's decision to the Appeals

4  Council, which declined to review plaintiff's claim.  Tr. 476-77.  Plaintiff appealed this final

5  decision of the Commissioner to this Court.  *Budde v. Barnhart*, No. C02-0180C (Tr. 423).  On

6  August 13, 2002, this Court remanded the case pursuant to the stipulation of the parties for

7  further administrative proceedings.  Tr. 423-25.

8       ALJ Nichols held a second hearing on October 7, 2003, and heard testimony from

9  plaintiff and vocational expert Robert Aslan.  On February 13, 2004, the ALJ issued a written

10  decision denying plaintiff's applications for SSI and DIB.  Tr. 388-99.  Plaintiff appealed the

11  ALJ's decision to the Appeals Council, which declined to review plaintiff's claim.  Tr. 376.

12  Plaintiff appealed this final decision of the Commissioner to this Court.

13                     II.  THE PARTIES' POSITION

14       Plaintiff requests that the Court reverse the ALJ's decision and award benefits, or in the

15  alternative, reverse and remand for further proceedings.  Plaintiff argues that the ALJ erred by:

16  (1) failing to consider all of plaintiff's impairments at step two; (2) failing to obtain medical

17  expert testimony to assist in determining the severity of plaintiff's impairments; (3) improperly

18  rejecting the interrogatory opinions of examining psychologist Silverio Arenas, Jr., Ph.D.; and

19  (4) improperly assessing plaintiff's credibility.  The Commissioner asserts that the ALJ's decision

20  is supported by substantial evidence and free of legal error.

21                     III.  STANDARD OF REVIEW

22       The court may set aside the Commissioner's denial of social security disability benefits

23  when the ALJ's findings are based on legal error or not supported by substantial evidence in the

24  record as a whole.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence

25

26  REPORT AND RECOMMENDATION
   PAGE - 2

means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion which must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

## IV.  EVALUATING DISABILITY

The claimant bears the burden of proving that he is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A).

The Social Security regulations set out a five-step sequential evaluation process for determining whether claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 416.920. At step one, the claimant must establish that he or she is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the claimant must establish that he or she has one or more medically severe impairments or combination of impairments. If the claimant does not have a "severe" impairment, he or she is not disabled. *Id.* at § (c). At step three, the Commissioner will determine whether the claimant's impairment meets or equals any of the listed impairments described in the regulations. A claimant who meets one of the listings is disabled. *See Id.* at § (d).

At step four, if the claimant's impairment do not meet or equal one of the impairments listed in the regulations, the Commissioner must assess the claimant's residual functional capacity

REPORT AND RECOMMENDATION
PAGE - 3

1   and the physical and mental demands of the claimant's past relevant work.  *Id.* at § (e).  If the

2   claimant is not able to perform his or her past relevant work, the burden shifts to the

3   Commissioner at step five to show that the claimant can perform some other work that exists in

4   significant numbers in the national economy, taking into consideration the claimant's residual

5   functional capacity, age, education, and work experience.  *Id.* at § (f); *Tackett v. Apfel*, 180 F.3d

6   1094, 1100 (9th Cir. 1999).  If the Commissioner finds the claimant is unable to perform other

7   work, then the claimant is found disabled.

8                          V.  SUMMARY OF THE RECORD EVIDENCE

9           Plaintiff was previously awarded a closed period of disability from June 12, 1995, to July

10   1, 1996, due to limitations caused by his reflex sympathetic dystrophy.  Tr. 16.  Plaintiff was 38

11   years old on the day of his last hearing.  Plaintiff has an eleventh grade education Tr. 541.  He

12   previously worked as an assembly line worker, janitor, seafood processor, commercial fisherman,

13   grinder, and security guard.  Tr. 159-66.

14          Because the parties have adequately summarized the record in their briefing, the Court

15   will not summarize the record here.  Relevant evidence will be incorporated into the discussion.

16                              VI.  THE ALJ'S DECISION

17          At step one, the ALJ stated that he believed plaintiff had engaged in substantial gainful

18   activity because he had continued to work seasonally as a commercial fisherman since his alleged

19   disability onset date.  However, for purposes of continuing the sequential evaluation process, the

20   ALJ determined that plaintiff had not engaged in substantial gainful activity since his alleged

21   disability onset date.  Tr. 390.  At step two, the ALJ found that plaintiff has been diagnosed with

22   reflex sympathetic dystrophy ("RSD"), degenerative disc disease, carpal tunnel syndrome, and

23   depressive/anxiety disorders, and that the combination of these impairments is severe.  Tr. 395.

24   At step three, the ALJ found that plaintiff's impairments do not meet or equal the requirements

25

26   REPORT AND RECOMMENDATION
     PAGE - 4

of a listed impairment.  *Id.*  At step four, the ALJ determined that plaintiff has the residual

functional capacity ("RFC") to perform light work.  He concluded that plaintiff is able to lift and

carry up to ten pounds frequently and up to twenty pounds occasionally.  He is able to sit, stand,

and walk for six hours in an eight hour day at one hour intervals, and he retains the ability to use

both hands for gripping and manipulative activities.  However, plaintiff is not able to perform

these task on a constant or sustained basis due to his RSD and carpal tunnel syndrome.

Additionally, due to his mental impairments, plaintiff may have minor concentration deficits and

should be limited to structured, repetitive work with only a few steps, and should not work with

the public more than two hours at a time.  Tr. 396.  The ALJ found that plaintiff maintained the

RFC to perform his past work as a security guard, with approximately 17,225 jobs in the

Washington State economy.  *Id.*  The ALJ made an alternative step five finding that plaintiff

could perform other light, unskilled work, such as a general cleaner and assembly worker,

existing in significant numbers in the local and national economy.  *Id.*  Therefore, the ALJ

concluded that plaintiff is not disabled.  Tr. 397.

## VII.  DISCUSSION

A.    ALJ's Step Two Assessment of Severe Impairments

At step two, the ALJ found that plaintiff "has been diagnosed with reflex sympathetic

dystrophy, degenerative disc disease in the lumbar spine, carpal tunnel syndrome, and

depressive/anxiety disorders."  Tr. 395.  The ALJ determined that "the combination of these

impairments significantly limits the claimant's functional abilities and thus is severe."  Tr. 395.

Plaintiff argues that the ALJ erred at step two because he failed to consider all of plaintiff's

disabling physical and mental impairments.  Specifically, plaintiff argues that the ALJ failed to

determine whether his diagnosis of "complex regional pain syndrome" by treating physician

David W. Dronicki, M.D., and his diagnosis of "chronic pain syndrome" by examining physician

REPORT AND RECOMMENDATION
PAGE - 5

1  Walter N. Ruf, M.D., and treating physician William Waltner, M.D., are severe physical

2  impairments.  (Dkt. #12 at 14-15).

3      "Complex regional pain syndrome" and "chronic pain syndrome," however, are

4  synonymous with "reflex sympathetic dystrophy," not separate impairments.  *See* The Merck

5  Manual of Diagnosis and Therapy, Sec. 14. Neurological Disorders, Chapt. 167. Pain (2005).

6  Accordingly, because the ALJ properly determined that the combination of plaintiff's

7  impairments, including his reflex sympathetic dystrophy, is severe, there is no evidence that the

8  ALJ failed to assess all of plaintiff's physical impairments.

9      Plaintiff also argues that the ALJ failed to determine whether his "chronic pain disorder"

10 found by examining psychologist Dr. Arenas, is a severe mental impairment.  This contention is

11 not well taken.  The ALJ specifically acknowledged plaintiff's diagnosis of "chronic pain," "pain

12 disorder," and "chronic pain disorder," making specific reference to Dr. Arenas' report, and the

13 Disability Determination Services physicians' Psychiatric Review Technique Form.  Tr. 392-93.

14 The ALJ also included plaintiff's pain disorder in the vocational hypothetical.  Tr. 582.  Contrary

15 to plaintiff's assertion, the ALJ went on to evaluate all of plaintiff's mental impairments,

16 including his chronic pain disorder, following the procedures set forth in 20 C.F.R. §§ 404.1520a

17 and 416.920a, reviewing the four functional areas of (1) activities of daily living, (2) social

18 functioning, (3) concentration, persistence, and pace, and (4) episodes of decompensation.  Tr.

19 395.  The ALJ stated:

20     I have serious doubts about the claimant's true level of mental limitations, considering
       his lack of treatment and lack of mental health complaints during his regular office
21     visits.  However, in order to give the claimant the full benefit of the doubt I will
       include the limitations assessed by the Disability Determination Services examiners at
22     Exhibit B13F and B14F [Psychiatric Review Technique Form], even though they are
       inconsistent with the claimant's own testimony during the hearing.  Under part "B" of
23     the listings, the claimant's mental impairments can be expected to cause moderate
       restrictions in his activities of daily living.  However, he only has mild limitations in his
24     ability to maintain concentration, persistence, and pace and mild limitations in his
       ability to maintain social functioning.  Further, there is no evidence that the claimant

25

REPORT AND RECOMMENDATION
26 PAGE - 6

has ever experienced episodes of decompensation in work-like settings or that he meets any of the criteria under part "C" of the listings.

Tr. 395.  The ALJ then properly concluded that plaintiff did not establish disability at step three of the sequential evaluation process.  Therefore, the ALJ's decision is adequately supported by the record and reflects due consideration of the various aspects of plaintiff's mental condition.

B.    Duty to Call a Medical Expert

Plaintiff argues that the ALJ was required to obtain medical expert testimony in order to determine the severity of plaintiff's impairments at step two.  Plaintiff states that when the District Court remanded this case the first time, the Court advised that "If warranted, the ALJ should obtain medical expert testimony in determining the nature and severity of Plaintiff's condition."  Tr. 424.  Here, plaintiff asserts that the medical expert testimony was "obviously warranted."  Plaintiff cites no authority in support of plaintiff's proposed per se duty to call a medical expert.

The decision whether to ask for and consider opinions from medical experts on the nature and severity of a claimant's impairments and on whether an impairment meets or equals a listed impairment is discretionary.  20 C.F.R. § 404.1527(f)(2)(iii).  While there is no doubt that the medical expert testimony would have made for a more complete record, and while it may have been a better practice, the issue before the Court is not a best practices issue.  Rather, the question is whether the failure to call a medical expert constitutes reversible error.  It does not.

C.    Medical Opinion Evidence

Plaintiff argues that the ALJ improperly rejected the written interrogatory opinions of examining psychologist Dr. Arenas by failing to give specific and legitimate reasons for the rejection.  Plaintiff alleges that the ALJ's rejection of Dr. Arenas' interrogatory opinions was based on nothing more than the ALJ's own "lay opinion."  The Commissioner counters that the ALJ provided several specific and legitimate reasons based on facts in evidence for rejecting the

REPORT AND RECOMMENDATION
PAGE - 7

1   contradictory opinions of Dr. Arenas.

2   In general, more weight should be given to the opinion of a treating physician than to a

3   non-treating physician, and more weight should be given to the opinion of an examining

4   physician that to a non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

5   Where not contradicted, a treating or examining physician's opinion may be rejected only for

6   "'clear and convincing'" reasons.  *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.

7   1991)).  Where contradicted, a treating or examining physician's opinion may not be rejected

8   without "'specific and legitimate reasons' supported by substantial evidence in the record for

9   doing so."  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

10   In this case, the ALJ summarized Dr. Arenas' 1999 psychological evaluation of plaintiff

11   as follows:

12   > On September 10, 1999, the claimant underwent consultative psychological evaluation
   > with Silverio Arenas, Jr., Ph.D.  This evaluation had been requested by Disability
13   > Determination Services because of the claimant's allegations that he is depressed.  A
   > Burn's Depression Checklist and Burns Anxiety Inventory showed severe levels of
14   > anxiety and depression.  However, during the mental status examination, Dr. Arenas
   > did not report any symptoms consistent with severe anxiety and depression.  The
15   > claimant told Dr. Arenas that his able to take care of his own personal needs without
   > assistance including hygiene and grooming, cooking and shopping, household chores
16   > and maintenance, financial management, and socializing.  Physical tasks were
   > described as requiring more time to complete due to chronic pain, but the claimant did
17   > not describe any difficulties performing normal activities.  Dr. Arenas opined that the
   > claimant's depression and anxiety are not particularly severe and specifically cited the
18   > claimant's failure to access mental health services.  Dr. Arenas stated that the
   > claimant's abilities to reason, understand, remember, and concentrate are intact, as are
19   > his ability to pace himself, persist at tasks, manage stress, and interact socially.  He
   > further noted that the claimant had probably unintentionally exaggerated the severity
20   > of his anxiety and depression on the Beck inventories because of his beliefs in his own
   > disability (Exhibit B8F).

21

22   Tr. 392.  One year later, at the request of plaintiff's counsel, Dr. Arenas completed a check-the-

23   box type form assessing plaintiff's mental impairments in terms used by the Social Security

24   Administration in its Listings of Impairments.  The ALJ explained his rejection of Dr. Arenas'

25   2000 interrogatory opinions as follows:

26   REPORT AND RECOMMENDATION
   PAGE - 8

One year later on September 5, 2000, Dr. Arenas completed a check box form assessing the claimant's chronic pain and fatigue, anxiety, and depression.  Dr. Arenas checked boxes which indicate that the claimant has marked and extreme limitations in his activities of daily living and social functioning, constant deficiencies of concentration, persistence, and pace, and continual episodes of decompensation (Exhibit B19F).  Dr. Arenas reported that he had based his assessment on prior evaluation he had performed on September 10, 1999, which is the same report in which he found the claimant to have intact abilities to reason, understand, remember, manage stress, and interact socially.  Thus we have a report indicating fairly benign symptoms made contemporaneously with an examination, followed by a check box form completed a year later that indicates severe pathology.  It strains credibility to believe that Dr. Arenas' September 5, 2000 opinion was based on the same examination, considering the marked inconsistencies between the two documents.  I thus give no weight to Dr. Arenas' opinion at Exhibit B19F.

Tr. 392-93 (emphasis added).

Relying on Dr. Arenas' own contradictory opinions, the ALJ gave several specific and legitimate reasons for rejecting Dr. Arenas' later interrogatory opinions.  As indicated above, the ALJ noted the marked inconsistencies between Dr. Arenas' 1999 evaluation and his 2000 opinions.  In 1999 Dr. Arenas specifically found that, despite high Burns Depression and Burns Anxiety scores, plaintiff's depression and anxiety are probably not severe.  Tr. 240.  Further, Dr. Arenas found that plaintiff had little difficulty performing normal activities; and that his abilities to reason, understand, remember, concentrate, pace himself, persist at tasks, manage stress, and socially interact are psychologically adequate.  Tr. 240.  Dr. Arenas also reported that plaintiff's Burns depression score was probably unintentionally exaggerated due to plaintiff's belief that he is disabled.  Tr. 240.  In 2000, however, Dr. Arenas stated that plaintiff's depression and anxiety caused marked and extreme limitations.  The ALJ thus rejected Dr. Arenas' 2000 opinions prepared one year after his examination of plaintiff which elaborated on and stated conclusions that were inconsistent with his 1999 report.

An ALJ may reject medical opinions based upon check-the-box type reports that lack a narrative explanation for their conclusions.  *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1995).  Courts are not obligated to accept any treating physician's opinion that is brief and conclusory in

REPORT AND RECOMMENDATION
PAGE - 9

1   form and that offers few clinical findings to support its conclusions. *Magallanes*, 881 F.2d at

2   751. The Court finds that the ALJ provided specific and legitimate reasons for rejecting Dr.

3   Arenas' September 2000 written interrogatory opinions. Moreover, those reasons were

4   supported by substantial evidence in the record.

5   D.   Plaintiff's Credibility

6        Plaintiff alleges that the ALJ failed to provide sufficient reasons for rejecting his

7   testimony. The Commissioner responds that the ALJ cited specific, clear and convincing reasons

8   for doubting plaintiff's impairments were of the disabling severity he alleged.

9        When deciding whether to accept the subjective symptom testimony of a claimant, the

10  ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce

11  objective medical evidence of one or more impairments; and (2) show that the impairment or

12  combination of impairments could reasonably be expected to produce some degree of symptom.

13  *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). In the second stage, the ALJ must

14  assess the credibility of the claimant's testimony regarding the severity of the symptoms. *Id*.

15  Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a

16  claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); s*ee also*

17  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). In finding a social security claimant's

18  testimony unreliable, an ALJ must render a credibility determination with sufficiently specific

19  findings, supported by substantial evidence. "General findings are insufficient; rather, the ALJ

20  must identify what testimony is not credible and what evidence undermines the claimant's

21  complaints." *Lester*, 81 F.3d at 834. "In weighing a claimant's credibility, the ALJ may consider

22  his reputation for truthfulness, inconsistencies either in his testimony or between his testimony

23  and his conduct, his daily activities, his work record, and testimony from physicians and third

24  parties concerning the nature, severity, and effect of the symptoms of which he complains."

25

26  REPORT AND RECOMMENDATION
    PAGE - 10

1  *Light v. Commissioner Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

2          In this case, the ALJ found that plaintiff was not credible as to his limitations and devoted

3  approximately two pages of the decision to explaining the reasons for this credibility finding.  As

4  described below, the ALJ noted plaintiff's continued work, activities of daily living, objective

5  medical evidence, and minimal treatment as reasons for finding that his subjective complaints do

6  not support the level of impairment:

7          The claimant testified during the hearing that he is unable to work due to RSD, carpal
        tunnel syndrome, numbness in his left leg, and depression.  He noted that his RSD
8          causes bouts of severe pain, numbness, and lack of sensation in his upper extremities
        and his carpal tunnel makes his hands swell and go numb.  The claimant stated that
9          because of these impairments he has difficulty using his hands, frequently drops things
        like pop cans, books, and remote controls, and can only write for about 10 minute
10         before his hands go numb.  The claimant also complained of problems with sleeping
        and left leg numbness that prohibits him from walking and standing for more than 10
11         to 15 minutes at a time.  The claimant stated that his current medications include
        Oxycontin, Wellbutrin, Cardura, and Vicodin.  He complained of several side effects
12         such as short term memory loss and decreased energy levels.  I note that the claimant
        has been taking similar medications for over 10 years, but his medical records do not
13         contain any reports of significant side effects from medications.  Further, the claimant
        has not been in the least bit hesitant to request increased doses of his medications.

14
        In regard to his alleged mental limitations, the claimant stated that he is receiving
15         treatment for depression from his primary care physician Dr. Waltner.  However, the
        medical records show that Dr. Waltner has only treated the claimant since 2003 and
16         Dr. Waltner's progress notes do not describe any mental complaints or symptoms
        (Exhibit B25F).  Further, the claimant has never been treated by a psychiatrist or
17         psychologist and he did not allege in [sic] psychiatric limitations in his original
        application (Exhibit 1E).

18
        In regard to his activities of daily living, the claimant testified that he lives with his
19         mother and her boyfriend, his 16 year old son, and his girlfriend.  The claimant
        reported that his daily activities include playing with his dog, helping his son work on
20         his car, and helping out whenever he can with chores.  However, he stated that he can
        only help out for a little while depending on the severity of his symptoms.  The
21         claimant does not go out and spends most of his time watching television.  His son
        drives his truck for him, because he has difficulty using his arms, and his mother and
22         girlfriend do the shopping.

23         The claimant's reports during the hearing about the severity of his impairments are
        contradicted by evidence in the claimant's medical records and statements the
24         claimant has made to his treating and examining physicians.  The claimant has
        engaged in many activities that are inconsistent with his allegations of severe and

25

26  REPORT AND RECOMMENDATION
  PAGE - 11

1    disabling pain, difficulty using hands for more than brief periods of time, and chronic
     leg pain that limits his ability to stand and walk. For example, in several consultative
2    examinations the claimant reported that he is wholly independent in his daily living
     activities including driving, shopping, walking his dogs, and attending his sons
3    sporting events (Exhibit B6E, B7E, and B23F). Further, he does seasonal work on a
     multi-ton fishing boat, took a 40 day sea trip in June 1996, and is the sole custodian
4    of his son (Exhibit B8F, p.3 and Exhibit B12F, p.25). In October 1999, Dr. Miller
     reported that the claimant's hands showed evidence of considerable work activity
5    including calluses and ground in dirt and motor oil (Exhibit B10F). Dr. Ruf also
     noted calluses, grime, and multiple scratches and abrasions on the claimant's hands in
6    December 2000, indicating considerable vigorous use of the hands (Exhibit B16F).
     Since the claimant appears to regularly engage in activities that are inconsistent with
7    his professional limitations, I cannot give much weight to his testimony.

8    The claimant has been diagnosed with carpal tunnel syndrome and RSD and was
     found to be disabled because of these impairments between June 1995 and July 1996.
9    However, his condition improved and he was able to return to work activity in July
     1996. The medical records do not show any worsening in the claimant's symptoms
10   since July 1997, his alleged onset date of disability. The claimant's carpal tunnel
     syndrome has been treated with release procedures, and the claimant's most recent
11   nerve conduction studies have been normal. His most recent physical examinations
     are also unremarkable and show no evidence of muscle atrophy or skin changes that
12   are indicative of RSD (Exhibit B10F). In addition, the claimant has received minimal
     treatment for his physical impairment for the last 4 years and has never sought
13   treatment for mental impairments. The objective medical evidence is inconsistent
     with his allegations, specifically showing no evidence of muscle atrophy or significant
14   loss of sensation, and also suggesting possible exaggeration of symptoms. Further,
     the claimant's continuing work activity and lively activities of daily living refute his
15   allegations.

16   Tr. 393-95.

17        In his decision, the ALJ appropriately pointed to specific medical evidence and a level of

18   activity inconsistent with some of plaintiff's alleged limitations. *See Rollins v. Massanari*, 261

19   F.3d 853, 857 (9th Cir. 2001)(stating that medical evidence is a relevant factor in determining the

20   severity of alleged pain and disabling effects; finding ALJ's interpretation of the evidence

21   concerning the level of plaintiff's activities reasonable). To support his findings, the ALJ noted

22   that while the plaintiff alleged disabling symptoms and pain, he actually engaged in a number of

23   activities which were inconsistent with a person who has disabling pain, difficulty using his hands

24   for more than brief periods of time, and chronic leg pain that limits his ability to stand and walk.

25
     REPORT AND RECOMMENDATION
26   PAGE - 12

1  Supportive of this finding was the evidence in the record that plaintiff drives, shops, walks his

2  dogs, and attends his son's sporting events.  The ALJ also noted that plaintiff has continued to

3  do seasonal work on a multi-ton commercial fishing vessel, working long hours in harsh

4  environments.  Multiple physicians reported that his hands showed evidence of considerable

5  work activity, including calluses and ground in dirt and oil.  Such activities are inconsistent with

6  plaintiff's alleged level of impairment and would allow the ALJ to draw an adverse inference as

7  to plaintiff's credibility.

8       The ALJ also considered the objective medical findings in discounting plaintiff's

9  testimony.  The ALJ noted that since July 1997, his alleged disability onset date, plaintiff's

10 condition has improved and the medical records do not show any worsening of plaintiff's

11 symptoms.  Plaintiff's carpal tunnel has been treated with release procedures, and his most recent

12 nerve studies have been normal.  Further, the ALJ noted that the recent medical evidence showed

13 no evidence of skin discoloration, muscle atrophy or significant loss of sensation indicative of

14 reflex sympathetic dystrophy, and suggested possible exaggeration of symptoms.

15      Finally, the ALJ indicates that plaintiff also received very minimal treatment for his

16 allegedly disabling physical and mental conditions.  *See Flaten v. Secretary of Health & Human*

17 *Servs*., 44 F.3d 1453, 1464 (9th Cir. 1995)(ALJ "was entitled to draw an inference from the

18 general lack of medical care.").  While plaintiff's lack of medical treatment standing alone cannot

19 form the basis for discounting testimony, it is a factor that may be considered in conjunction with

20 other legitimate reasons proffered.  *See, e.g., Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir.

21 2005)(holding that the ALJ is permitted to consider lack of treatment in his credibility

22 determination).

23      Contrary to plaintiff's contention, there is no evidence that the ALJ ignored his

24 impairments of carpal tunnel syndrome, reflex sympathetic dystrophy, or disc disease, nor is there

25

26 REPORT AND RECOMMENDATION
   PAGE - 13

1   any evidence that the ALJ found that plaintiff did not suffer any difficulty from these

2   impairments.  Rather, the record shows that the ALJ specifically addressed each of these

3   impairments in his credibility determination, hypothetical to the vocational expert, and residual

4   functional capacity assessment.  Although plaintiff's impairments could reasonably be expected

5   to cause some degree of symptoms, the ALJ offered sufficient reasons to find that plaintiff's

6   allegations of total disability based on these impairments not fully credible.

7   　　　This Court is limited to evaluating whether or not the ALJ's explanation for partially

8   discrediting plaintiff is supported by substantial evidence in the record.  *See Thomas*, 278 F.3d at

9   959.  When all the reasons identified by the ALJ are considered together, they demonstrate that

10  he properly evaluated both the objective medical evidence and plaintiff's subjective symptoms as

11  required.  Accordingly, this Court concludes that the ALJ provided clear and convincing reasons

12  supported by substantial evidence for finding plaintiff's statements regarding the limitations from

13  his impairments not entirely credible.  *See Vertigan*, 260 F.3d at 1049.  Accordingly, his

14  credibility assessment should be upheld.

15  　　　　　　　　　　　　　　　VIII.  CONCLUSION

16  　　　The Commissioner's decision to deny plaintiff disability insurance benefits is supported by

17  substantial evidence and is free of legal error.  Based on the record evidence, the undersigned

18  recommends that the Commissioner's decision be affirmed.

19  　　　DATED this 30th day of August, 2005.

20

21  _____

22  MONICA J. BENTON
    United States Magistrate Judge

23

24

25

26  REPORT AND RECOMMENDATION
    PAGE - 14